1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   KAREN BELL, on behalf of BRYAN E.)   Case No. ED CV 14-652-SP
     BELL,                            )
12                                    )
                    Plaintiff,        )
13                                    )   MEMORANDUM OPINION AND
                v.                    )   ORDER
14                                    )
                                      )
15   CAROLYN W. COLVIN, Acting        )
     Commissioner of Social Security  )
16   Administration,                  )
                                      )
17                  Defendant.        )
                                      )
18   _____)

19

20                              **I.**

21                         **INTRODUCTION**

22           On April 3, 2014, Karen Bell filed a complaint against defendant, the

23   Commissioner of the Social Security Administration ("Commissioner"), seeking a

24   review of a denial of a period of disability and disability insurance benefits

25   ("DIB"), on behalf of her deceased son, plaintiff Bryan E. Bell.  Both plaintiff and

26   defendant have consented to proceed for all purposes before the assigned

27

28

                                    1

1  Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court deems the matter
2  suitable for adjudication without oral argument.

3      Plaintiff presents three issues for decision:  (1) whether the Administrative
4  Law Judge ("ALJ") erred in determining plaintiff did not meet Listing 1.05C; (2)
5  whether the ALJ erred in relying on vocational expert testimony that deviated
6  from the Dictionary of Occupational Titles ("DOT") without obtaining an
7  explanation for the deviation; and (3) whether the ALJ properly considered
8  plaintiff's credibility.  Memorandum in Support of Complaint ("P. Mem.") at 9-18;
9  Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-12.

10     Having carefully studied, inter alia, the parties' moving papers, the
11  Administrative Record ("AR"), and the decision of the ALJ, the court concludes
12  that, as detailed herein, the ALJ properly determined plaintiff failed to meet all the
13  requirements of Listing 1.05, but erred in relying on vocational expert testimony
14  that deviated from the DOT without explanation, and erred in discounting
15  plaintiff's credibility in relation to plaintiff's visual impairments.  Consequently,
16  this court remands the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

19     Plaintiff, who was forty-seven years old on his alleged disability onset date,
20  completed high school and one year of college.  AR at 156, 189.  His past relevant
21  work was as an audio visual technician, a sales person of household appliances,
22  and an administrative assistant.[1]  *Id.* at 55-58, 189.

---

25  [1]  Plaintiff worked for three years as a partner and vice president of a
26  mortgage company.  AR at 55-56, 189.  The VE testified that plaintiff lacked the
    required four years to qualify as a Vice President under the DOT, but found
27  plaintiff's duties in that position sufficiently similar to the duties of an
28  administrative assistant qualify his relevant past work as such.  *Id.* at 57-58.

On August 12, 2010, plaintiff filed an application for a period of disability and DIB, due to brittle diabetes impairment, hypertensive cardiovascular disease/hypertension, partial right foot amputation, and kidney damage. *Id.* at 156, 188, 194. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 71-73, 75-79.

On April 11, 2012, plaintiff, represented by a non-attorney representative, appeared and testified at a hearing before the ALJ. *Id.* at 53-56, 60-65, 153. The ALJ also heard testimony from vocational expert ("VE") Katie Macy-Powers and medical expert Dr. Donald Blackman. *Id*. at 48-60. On April 16, 2012, the ALJ denied plaintiff's claim for benefits. *Id.* at 31-38.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since June 1, 2010, the alleged onset date. *Id.* at 33.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: osteomyelitis and right foot ulcer status post below knee amputation on the right side, diabetes mellitus, hypertension, and cardiovascular disease. *Id*. The ALJ also determined plaintiff's visual impairment and kidney damage do not qualify as severe impairments. *Id.* at 33-34.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 ("Listing"). *Id.* at 34. The ALJ specifically noted plaintiff's impairments "do not meet or medically equal the criteria of listing 1.05, 9.00, 4.02, 4.12, or any other listing." *Id.*

//

//

//

3

1    The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and

2    determined that plaintiff had the RFC to perform a full range of sedentary work as

3    defined in 20 CFR 404.1567(a), but with the functional limitations that plaintiff

4    can: stand and/or walk during two hours out of an eight-hour workday, but only

5    for short periods of time and with the use of an assistive device such as a walker or

6    cane; sit for six hours out of an eight-hour workday; and occasionally climb ramps

7    and stairs, balance, stoop, kneel, crouch, squat, and crawl, but must never climb

8    ladders, ropes, or scaffolds. *Id.* at 34-35. Additionally, plaintiff cannot perform

9    any pushing and/or pulling maneuvers or any foot operations with his right lower

10   extremity, or perform any work requiring fine vision. *Id.*

11   The ALJ found, at step four, that plaintiff was capable of performing his

12   past relevant work as an administrative assistant. *Id.* at 37. Consequently, the

13   ALJ concluded that plaintiff did not suffer from a disability as defined by the

14   Social Security Act. *Id.* at 38.

15   Plaintiff filed a timely request for review of the ALJ's decision, which was

16   denied by the Appeals Council. *Id.* at 1-7. The ALJ's decision stands as the final

17   decision of the Commissioner.

**III.**

**STANDARD OF REVIEW**

20   This court is empowered to review decisions by the Commissioner to deny

21   benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

22   Administration must be upheld if they are free of legal error and supported by

---

[2]   Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step
evaluation, the ALJ must proceed to an intermediate step in which the ALJ
assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
F.3d 1149, 1151 n.2 (9th Cir. 2007).

1   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

2   (as amended).  But if the court determines that the ALJ's findings are based on

3   legal error or are not supported by substantial evidence in the record, the court

4   may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

5   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

6   1144, 1147 (9th Cir. 2001).

7          "Substantial evidence is more than a mere scintilla, but less than a

8   preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

9   "relevant evidence which a reasonable person might accept as adequate to support

10  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

11  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

12  finding, the reviewing court must review the administrative record as a whole,

13  "weighing both the evidence that supports and the evidence that detracts from the

14  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

15  affirmed simply by isolating a specific quantum of supporting evidence.'"

16  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243

17  (9th Cir. 1998)).  If the evidence can reasonably support either affirming or

18  reversing the ALJ's decision, the reviewing court "'may not substitute its

19  judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016,

20  1018 (9th Cir. 1992)).

21                                              **IV.**

22                                        **DISCUSSION**

23  **A.     Plaintiff's Disability Fails to Meet or Medically Equal Listing 1.05**

24          Plaintiff argues the ALJ erred in his step three determination by concluding

25  plaintiff's condition did not meet or medically equal the Listing at 20 C.F.R. Part

26  404, Subpart P, Appendix 1, § 1.05(C).  P. Mem. 9-12.  Specifically, plaintiff

27  argues that he "clearly met the criteria of the Listing at section 1.05C, which

28

                                                5

1  relates to the amputation of one lower extremity" and that "the ALJ failed to

2  provide any reasoning at all" for his conclusion that plaintiff failed to meet the

3  criteria." P. Mem. 10. The court disagrees.

4       At step three, the claimant has the burden of proving that he or she meets or

5  equals a Listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L.

6  Ed. 2d 119 (1987). Social Security regulations provide that a claimant is disabled

7  if he or she meets or medically equals a listed impairment set forth in 20 C.F.R.

8  Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(a)(4)(iii) ("If you have an

9  impairment that meets or equals one of the listings . . . we will find that you are

10  disabled"), 416.920(d) ("If you have an impairment(s) which . . . is listed in

11  Appendix 1 or is equal to a listed impairment(s), we will find you disabled without

12  considering your age, education, and work experience"). In other words, if a

13  claimant meets or equals a Listing, he or she will be found disabled at this step

14  "without further inquiry." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

15  In such case, there is no need for the ALJ to complete steps four and five of the

16  sequential process. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

17       In order to meet Listing 1.05 (Amputation due to any cause), a claimant

18  must satisfy all the requirements enumerated in any one of the Listing's

19  paragraphs A through D. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.05.

20  Plaintiff refers specifically to paragraph C (P. Mem. at 9-11), which requires a

21  claimant to have "[o]ne hand *and* one lower extremity [amputated] at or above the

22  tarsal region." *Id.* (emphasis added); D. Mem. 2. Neither of plaintiff's hands was

23  amputated. "For a claimant to show that his impairment matches a listing, he must

24  meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530,

25  110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), *superseded by statute on other grounds*,

26  42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.926(a)-(b); Social Security

27

28

1   Ruling ("SSR") 83-19.[3]  Plaintiff therefore fails to meet the requirements of

2   Listing 1.05C.

3         To establish that an impairment is medically equivalent to a listed

4   impairment, it is the claimant's burden to show that his impairment "is at least

5   equal in severity and duration to the criteria of any listed impairment."  20 C.F.R.

6   § 416.926(a).  For an impairment or combination of impairments to equal a

7   Listing, the claimant "must present medical findings equal in severity to all the

8   criteria for the one most similar listed impairment."  *Sullivan*, 493 U.S. at 531, 110

9   S. Ct. 885, 107 L. Ed. 2d 967.  Plaintiff makes no argument that any of his

10  impairments equal that of an amputated hand.

11        It appears, however, that plaintiff may have only mistakenly referred to

12  paragraph C.  Plaintiff misstates Listing 1.05C's requirements, and instead recites

13  those stated in paragraph B.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1,

14  § 1.05(B)-(C); P. Mem. 10.  Plaintiff thus analyzes his disability in light of the

15  requirements of Listing 1.05B while referencing Listing 1.05C.  P. Mem. 10.  But

16  regardless of the paragraph at issue, plaintiff's arguments fail overcome the ALJ's

17  conclusion that he fails to meet the requirements of Listing 1.05.

18        After determining that plaintiff suffered from severe impairments, including

19  "osteomyelitis and right foot ulcer status post below knee amputation on the right

20  side," the ALJ held broadly that plaintiff's disabilities failed to meet or equal the

21  criteria of any paragraph in Listing 1.05.  AR at 34.  Plaintiff argues his inability

22  to effectively ambulate, due to the amputation of his right leg, meets all the

23  ─────────────────────

24        [3]   "The Commissioner issues Social Security Rulings to clarify the Act's
     implementing regulations and the agency's policies.  SSRs are binding on all

25   components of the SSA.  SSRs do not have the force of law.  However, because
     they represent the Commissioner's interpretation of the agency's regulations, we

26   give them some deference.  We will not defer to SSRs if they are inconsistent with
     the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th

27   Cir. 2001) (internal citations omitted).

28

1    requirements under Listing 1.05.  P. Mem. 10-12.  Listing 1.05B requires "[o]ne or

2    both lower extremities [amputated] at or above the tarsal region, with stump

3    complications resulting in medical inability to use a prosthetic device to ambulate

4    effectively, as defined in 1.00B2b, which have lasted or are expected to last for at

5    least 12 months."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.05(B).

6    Plaintiff's amputation meets the first requirement of this Listing (AR at 243-244,

7    247, 302), but the ALJ found plaintiff effectively ambulates using a cane and his

8    prosthetic leg.  AR at 36-37.

9         Section 1.00B2b describes effective ambulation, in part, by providing

10   examples of ineffective ambulation, including an inability to "to walk a block at a

11   reasonable pace on rough or uneven surfaces."  20 C.F.R. Part 404, Subpart P,

12   Appendix 1, § 1.00(B)(2)(b).  In an effort to meet the ineffective ambulation

13   definition in § 1.00B2b, plaintiff points to a pre-printed check box on a prison

14   medical record that limited plaintiff to "relatively level terrain" with "no

15   obstructions in path of travel."  P. Mem. 10; AR at 509.  But the same form

16   contains a handwritten note, on which the testifying medical expert relied,

17   indicating plaintiff can traverse more than one hundred yards without pause when

18   using his walker and wearing his prosthetic leg.  AR at 50-51, 509.  The ALJ

19   reasoned during his analysis of plaintiff's RFC, "[plaintiff] appears highly

20   functional despite his right leg prosthesis."  *Id.* at 36.  Plaintiff "did not testify to

21   any functional problems due to his amputation . . . . [t]here is no mention in the

22   prison records indicating that he requires special accommodation due to his right

23   leg amputation . . . . he is able to do light housework . . . . [and] drive a car."  *Id.* at

24   36.  The ALJ further noted that the medical expert who testified at the hearing

25   found plaintiff's disabilities failed to met or equaled any Listing.  *Id.* at 37, 50.

26        Plaintiff argues that the ALJ's analysis failed to take into account the

27   medical expert's testimony that plaintiff's combined diabetes, gangrene, and

28

8

1   infection may have been severe enough to at some point "equal some sort of
2   listing." P. Mem. 10-11; AR 49-50.  Contrary to plaintiff's contentions, it is not
3   "clear" that when Dr. Blackman made this statement, "the only Listing to which
4   Dr. Blackman could reasonable have been referring is the Listing regarding
5   amputations." P. Mem. 11.  The doctor's follow-up testimony related to the
6   removal of diabetes as "a listing-level impairment" and an analysis of how
7   plaintiff's various ailments — congestive heart failure, renal failure, peripheral
8   neuropathy, and hypertension — coupled with diabetes do not meet any Listing.
9   AR at 50.  This additional testimony points the doctors earlier comments towards
10  the outdated diabetes Listing and away from the Listing related to amputations.
11  *See id.*

12       Reading the ALJ's decision as a whole, the ALJ provided an adequate
13  explanation for why plaintiff does not meet Listing 1.05 that was more than "[a]
14  mere statement that claimant did not [meet or] equal the listing." *Santiago v.*
15  *Barnhart*, 278 F. Supp. 2d 1049, 1057-58 (N.D. Cal. 2003) (citing *Marcia v.*
16  *Sullivan*, 900 F.2d 172, 176 (9th Cir.1990)).  Where sufficient explanation that is
17  free of legal error and supported by substantial evidence allows for meaningful
18  review, the ALJ's decision must be upheld.  *Mayes*, 276 F.3d at 458-59 (9th Cir.
19  2001).  The ALJ did not err in finding plaintiff's impairments failed to meet
20  Listing 1.05.

21  **B.    The ALJ Erred in Relying on the VE Testimony by Failing to Obtain an**
22  **Explanation for or Resolving an Apparent Conflict with the DOT**

23       Plaintiff contends the ALJ erred at step four because he improperly relied on
24  the testimony of the VE, who identified a job that exceeded plaintiff's RFC.
25  P. Mem. at 12-15.  Specifically, plaintiff argues the ALJ failed to identify or
26  resolve the conflict between the DOT's requirement that an administrative
27
28

assistant possess "near visual acuity" and plaintiff's inability to "perform tasks requiring 'fine vision.'" P. Mem. 13; AR at 35, 57-59. The court agrees.

At step four, plaintiff must prove he is unable to perform his past relevant work either as he performed it, or as it is generally performed. *Pinto v. Massanari*, 249 F. 3d 840, 845 (9th Cir. 2001). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step four or five, the evidence must demonstrate either that plaintiff can perform his past work, or that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

"The best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto*, 249 F.3d at 845-46 (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (observing that the DOT is a source of reliable job information). The DOT and its Selected Characteristics of Occupations ("SOC") supplement may be relied upon as the rebuttable presumptive authority regarding job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefore. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p). But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

Here, the ALJ, asked the VE to "[m]ake sure [her] testimony is consistent with the Dictionary of Occupational Titles" and to "let us know" if she deviates.

AR at 57.  Because the VE did not provide any indication that she believed her testimony to be inconsistent with the DOT, the ALJ may be deemed to have fulfilled his initial obligation to inquire whether the VE's testimony conflicted with the DOT, but that was not the end of the ALJ's obligation.

Where a VE wrongly testifies that there is no conflict, but "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p).  The ALJ errs if he or she fails to obtain an explanation for and resolve an apparent conflict — even if the VE did not identify the conflict. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (asserting ALJ erred in relying on VE's faulty testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

Here, the ALJ determined plaintiff's RFC restricts him from jobs "which would require fine vision."  AR at 35.  At the hearing, when the ALJ presented his hypothetical person to the VE, she responded by asking the ALJ for clarification regarding fine vision: "Do you mean working with a needle and thread or --" *Id.* at 59.  The ALJ responded, "[a]nything that would require fine vision out of the ordinary for doing threading, machine work." *Id.*  With that explanation, the VE testified that such a person could perform the work of an administrative assistant as plaintiff had performed and as it is generally performed in the national economy. *Id.*  No clarification was provided for the definition of the term "fine vision" in the context of an office where an administrative assistant works

1   primarily with printed documents and computer equipment, rather than machines

2   or needles and thread.  *Id.*

3          The VE provides no explanation for the apparent conflict that an individual

4   who is restricted from jobs requiring fine vision may be capable of conducting

5   tasks requiring frequent near visual acuity.  U.S. DEP'T. LAB., DICTIONARY

6   OCCUPATIONAL TITLES, ADMINISTRATIVE ASSISTANT, DICOT 169.167-010, 1991

7   WL 647424 (4th ed. rev. 1991).  The SOC defines near acuity as "[c]larity of

8   vision at 20 inches or less" and frequent activity as "a condition exist[ing] from

9   1/3 to 2/3 of the time."  SELECTED CHARACTERISTICS OF OCCUPATIONS TITLES C2-

10  C4 (U.S. Dep't Lab. Emp. Training Admin. 1993); P. Mem. 13.  In order for an

11  ALJ to accept a VE's testimony that contradicts the DOT, the record must contain

12  "'persuasive evidence to support the deviation.'"  *Id.* at 1153 (quoting *Johnson*, 60

13  F.3d at 1435).  Evidence sufficient to permit such a deviation may be either

14  specific findings of fact regarding the claimant's residual functionality, or

15  inferences drawn from the context of the expert's testimony.  *Light v. Soc. Sec.*

16  *Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

17         The record also does not contain persuasive evidence supporting the ALJ's

18  conclusion that an individual restricted from tasks requiring fine vision, as the

19  ALJ defined the term, could perform the duties of an administrative assistant.  Dr.

20  Blackman's testimony regarding plaintiff's changing visual acuity describes

21  plaintiff's prescription as changing from 20/20 corrected vision in both eyes in

22  September 2011, to qualified retinopathy in January 2012 with corrected vision of

23  20/50 in his right eye and 20/400 in his left eye.[4]  AR at 52.  The doctor states

24

25         [4]  Both Dr. Blackman and the ALJ mistakenly refer to a September 2012 date
26  regarding the change in plaintiff's retinopathy and failing eyesight.  AR at 34-35,
    52, 527.  The date on the form in question — one among many from his prison
27  medical records — is difficult to discern, but as plaintiff was released from prison
    in April 2012, the form must be dated January 23, 2012 (month "01") as plaintiff
28

12

"there would be restrictions as far as, you know, ability to do fine work with his eyes." *Id.* at 52-53.  No additional definition or description of doing fine work was elicited or provided.

Plaintiff testified that his "vision keeps [him] from doing things like computer work and a lot of paperwork" and that he has "a lot of problems looking at the computer screen." *Id.* at 61.  Plaintiff testified that he has problems with sensitivity to light and problems focusing.  *Id.*  In discussing plaintiff's visual impairment, the ALJ stated, "[a]s long as the claimant retains sufficient visual acuity to be able to handle and work with rather large objects and avoid workplace hazards there exists substantial numbers of occupations at the sedentary exertional level (SSRs 85-15 and 96-9p)." *Id.* at 33.  But the VE only identified the position of administrative assistant and the ALJ only refers to administrative assistant jobs in his analysis. *Id.* at 59.

Even if the ALJ appropriately discredited plaintiff's testimony, which is discussed further below, neither the medical expert's testimony nor the medical records provide support for the VE's and ALJ's conclusion that plaintiff can perform the work of an administrative assistant as defined in the DOT.  AR at 33, 52, 477, 527; *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding the ALJ erred in deviating from the DOT based "on her own speculation and the VE's brief and indefinite testimony").  Defendant claims plaintiff's argument should fail, in part, because "[e]ven if a claimant cannot perform past relevant work as generally performed, *e.g.* as the DOT describes the work, he still is not disabled if he can do the job as he actually performed it."  D. Mem. 4.  The VE's statement that a hypothetical person with plaintiff's limitations could perform the work of an administrative assistant as plaintiff did in the past, rather than as the

_____

contends and not September 23, 2012 (month "9") as misstated by the ALJ and doctor. *Id.*; P. Mem. 6, 14; D. Mem. 9.  Plaintiff's sight thus dramatically deteriorated over the course of four months.

work is performed generally, does not cure the apparent conflict.  Plaintiff described his tasks as a partner in a mortgage company as including "mostly all computer stuff" such as assisting with data processing, email, bookkeeping, payroll, and human resources.  AR at 55-56.  It is still unclear how an individual with 20/400 corrected vision in one eye, who is restricted from activities involving fine vision, could perform work requiring clear vision at less than twenty inches from source material for up to two thirds of the time spent on the job.  *See* SELECTED CHARACTERISTICS OF OCCUPATIONS TITLES C2-C4 (U.S. Dep't Lab. Emp. Training Admin. 1993); P. Mem. 13.  In short, the VE articulated no basis for her testimony.

The ALJ erred in failing to obtain a reasonable explanation for the VE's deviation from the DOT or resolving the apparent conflict. *See Hernandez*, 2011 WL 223595, at *2-5; *Mkhitaryan*, 2010 WL 1752162, at *3.  The ALJ thus erred in his step four determination, as it is unsupported by substantial evidence.  *See Smolen*, 80 F.3d at 1279.  This error was not harmless because the VE and ALJ failed to identify any other jobs available in significant numbers in the national economy that plaintiff retains the ability to perform.  *See Tommasetti*, 533 F.3d at 1042.

## C.   The ALJ Erred in Discounting Plaintiff's Credibility Regarding His Vision, But Not Regarding His Other Impairments

Plaintiff asserts the ALJ put forth insufficient "rationales for disbelieving [plaintiff's] claim of disability."  P. Mem. 15.  Specifically, plaintiff claims the ALJ "misquotes and inappropriately minimizes" the medical evidence related to plaintiff's vision tests, incorrectly draws an inference that plaintiff's "amputation and other complications were occasioned exclusively by [plaintiff's] own failure[s]," and erroneously equates being "highly functional" with a showing of employability.  *Id.* at 15-18.

The ALJ must make specific credibility findings, supported by the record. SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

At the first step, the ALJ expressly found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.  AR at 37.  At the second step, because the ALJ did not find any evidence of malingering, he was required to provide clear and convincing reasons for discounting plaintiff's credibility.  *Benton*, 331 F.3d at 1040.  An ALJ may consider several factors in weighing a claimant's credibility at the second step, including: ordinary techniques of credibility evaluation such as a claimant's reputation for lying; the failure to seek treatment or follow a prescribed course of treatment; and inconsistencies with the claimant's testimony or between the testimony and claimant's daily activities.  *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47; *Ynzunza v. Astrue*, 2010 WL 3270075, at *3 (C.D. Cal. Aug. 17, 2010).  Here, the ALJ discounted plaintiff's credibility because  his alleged symptoms were inconsistent with his treatment records, he was non-compliant with his treatment plans, and his daily activities were inconsistent with his alleged symptoms.  AR at 35-37.

1    1.    <u>Visual Impairment</u>

2    Plaintiff does not contest the ALJ's RFC limitation restricting plaintiff

3    "from working at a job[] which would require fine vision."  *See* AR at 35.  But he

4    does take issue with the ALJ's determination that plaintiff's "medically

5    determinable vision impairment is nonsevere," which resulted, in part, from the

6    ALJ's credibility determination.  P. Mem. 14-16; *see* AR at 33-34.  Plaintiff

7    contends his vision impairment manifests itself in a way that severely impacts his

8    sensitivity to light, ability to focus, and capability of reading on a computer screen.

9    AR at 61; P. Mem. 14.

10    The ALJ relied heavily on the objective evidence and the medical opinion of

11    the non-treating expert Dr. Blackman, because plaintiff failed to provide any

12    treating physician statements.  *See* AR at 37.  The ALJ also noted there was no

13    evidence that plaintiff had difficulty moving about due to his visual impairment,

14    and underscored the lack of complaints on the part of plaintiff regarding the

15    negative impact the disability has on his functioning.  *Id.* at 35.  But in his October

16    11, 2011 Social Security Functional Report, plaintiff lodged substantial

17    complaints about how his vision was impacting his functioning.  *Id.* at 212-13,

18    216-17.  Further, at the time of the hearing, the ALJ had conducted only a cursory

19    review of plaintiff's prison medical records.  *Id.* at 64.  At the close of the hearing

20    plaintiff's representative argued, "I think the retinopathy is a little more significant

21    than Dr. Blackman was going to lead us to believe."  *Id.*  He suggested that a

22    consulting examination be completed by an ophthalmologist.  *Id.*  The ALJ

23    replied, "I'll look at the prison records again and then decide what I'm going to do

24    next."  *Id.* at 65; *see McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010)

25    (discussing ALJ's duty to develop the record further where there is ambiguous

26    evidence or the record is inadequate).  No consulting examination is in the record.

27    The ALJ acknowledged plaintiff's testimony about his difficulty reading

28    text on a computer screen, but discounted the testimony as inconsistent with

16

plaintiff's testimony that he has no problems using a keyboard, has a valid driver's licence, and occasionally drives.  AR at 35.  But none of these admissions contradicts the assertion that plaintiff has great difficulty reading text on a computer monitor.  *Id.* at 61.  The ability to work with a keyboard differs substantially from the ability to read a computer monitor: the distance from the eyes to the text differs; the contrast between the text and the background differs; the way in which the light hits and reflects off the surfaces differs; and some long-term keyboard users no longer even read the text on the keys while typing.  Failing to surrender one's valid driver's licenses that is not due for renewal for a year (*id.* at 63), and admitting to driving "very, very rarely on an emergency" (*id.*), but not at night or in bright light (*id.* at 216), do not negate or even contradict plaintiff's assertions that he cannot read a computer screen without the assistance of a magnifying glass and that he is "very light sensitive."  *Id.* at 61-63.

Defendant highlights plaintiff's failure to follow recommended treatment as a legitimate reason for discrediting plaintiff's testimony.  D. Mem. 11.  As discussed below, this reason is clear and convincing.  But the ALJ does not appear to rely on this reason in his assessment of the credibility of plaintiff's testimony regarding his vision.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citation omitted)).  Moreover, even assuming the ALJ did consider plaintiff's failure to follow his treatment plan in assessing plaintiff's credibility generally, his other reasons for discounting plaintiff's vision complaints are so flawed that, on balance, the ALJ failed to provide specific, clear and convincing reasons for rejecting plaintiff's assertions regarding his failing eyesight.  *See Smolen*, 80 F.3d at 1281; *Benton*, 331 F.3d at1040.

2.     Diabetes, Hypertension, and Cardiovascular Impairment

Plaintiff also contends the ALJ erred in discounting his testimony regarding his diabetes, hypertension, and cardiovascular disease.  P. Mem 15-16; *see* AR at 35-36.  The ALJ did so by detailing plaintiff's repeated failure to comply with his physician's recommendations.  AR at 35-36; *see Orn*, 495 F.3d at 638 (stating a failure to seek treatment for complaints is "a basis for finding the complaint unjustified or exaggerated"); *Tommasetti*, 533 F.3d at 1039 (noting failure to follow a prescribed course of treatment weighs against a claimant's credibility); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Prior to his leg amputation, plaintiff "failed to comply with checking his blood sugar, adhering to dietary restrictions, or taking medication" needed to control his diabetes. AR at 35-36; *see id.* at 275, 282, 298.  After his amputation, in "the remainder of 2010 and 2011, he missed multiple diabetic management medical appointments and was not compliant with his medication or with his monitoring of his blood sugar." *Id.* at 36; *see id.* at 386-387, 390-92, 396-97, 400-01, 403, 405, 409, 411-12, 417, 517.  Contrary to plaintiff's counter argument that while in prison "plaintiff's diabetes was *uncontrolled* despite the regularity of his treatment" (P. Mem. 17), the record reflects that even while in prison, plaintiff refused his regular insulin on at least one occasion.  AR at 517.

The record equally reflects plaintiff's disregard of the medical treatment plans to control his hypertension (*id.* at 36, 394-95, 397), and plaintiff's lack of pursuit of treatment associated with his diagnosis of cardiovascular disease. *Id.* at 36; *Orn*, 495 F.3d at 638 (citing failure to seek treatment as a good basis for an adverse credibility finding unless there was a good reason for not doing so). Plaintiff further exacerbated his conditions by continuing to use nicotine and maintain poor dietary habits despite his doctors' recommendations to the contrary.

*Id.* at 393, 396-97, 404, 425.  The ALJ did not err in discounting plaintiff's credibility in relation to his diabetes, hypertension, and cardiovascular impairments.

### 3. Amputation Impairment

Finally, plaintiff argues the ALJ erred in discounting his subjective complaints about the limitations he experiences due to his amputation.  P. Mem. 17-18.  Plaintiff specifically disputes the ALJ's finding of a "purported lack of evidence that his amputation results in any functional problems." *Id.*; *see* AR at 36.  To be clear, the ALJ did account for plaintiff's amputation in determining his RFC.  The ALJ found plaintiff has the capacity to perform sedentary work with functional limitations including no use of his right lower extremity for pulling, pushing, or foot maneuvers; no climbing of ladders, ropes, and scaffolds; and only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, squatting, and crawling.  AR at 35.

Nonetheless, plaintiff is correct that the ALJ discounted plaintiff's claims about the extent to which the amputation limited his functionality, because these claims are inconsistent with plaintiff's other testimony and medical records.  *Id.* at 36.  Among other things, the ALJ looked at evidence of plaintiff's daily activities. Inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible.  *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346.  But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant does not need to be "utterly incapacitated."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

In plaintiff's October 11, 2011 Social Security Functional Report, he claimed "limited functionality due to his amputation" and related "problems

lifting, squatting, bending, standing, walking, sitting, kneeling, and stair climbing." AR at 218; see *id.* at 36. The ALJ noted the same report includes admissions that plaintiff assisted in light house-work, made his own meals, drove a car, did his own laundry, and shopped for his own groceries, clothes, and DVDs. *Id.* at 36; *see id.* at 214-218. Additionally, plaintiff notes in the form that he can lift 50 pounds, sit as long as he can straighten his leg, and if he is not carrying anything, plaintiff can walk up stairs that have railings. *Id.* at 214-218.

The ALJ's assessment of plaintiff's credibility is further bolstered by plaintiff's failure to "testify to any functional problems due to his amputation," and records indicating plaintiff can walk with only minor difficulty. *Id.* at 35. Plaintiff argues that contrary to the ALJ's assertions, prison records do show some accommodations were made in light of plaintiff's amputation. P. Mem. 18; *see* AR at 509. But the same records state plaintiff can traverse more than one hundred yards without pause while wearing his prosthetic leg and using his walker. AR at 509. Additionally, Dr. Blackman found plaintiff's prosthetic leg and inability to repetitively squat do not prohibit plaintiff from all work, but restrict plaintiff to work performed "primarily [in] a sedentary position." *Id.* at 51. The ALJ did not err in discounting plaintiff's credibility regarding the extent of his amputation impairment.

In sum, the ALJ erred by failing to provide specific, clear, and convincing reasons for rejecting plaintiff's testimony only as it relates to his visual impairment, but did not err in otherwise discounting plaintiff's subjective complaints.

### V.

### <u>REMAND IS APPROPRIATE</u>

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this

discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, as set out above, remand is appropriate because there are outstanding issues that must be resolved before it can be determined whether plaintiff is disabled, including further development of the record. The ALJ's must reconsider the credibility of plaintiff's testimony regarding his visual impairment and, if appropriate, further develop the record in this regard. In addition, the ALJ must obtain a reasonable explanation from the VE for any deviation from the DOT and to resolve the apparent conflict between the visual requirements of any position the VE testifies plaintiff may perform and plaintiff's RFC.

On remand, the ALJ shall: (1) reconsider plaintiff's subjective complaints regarding his visual impairment, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it; (2) reassess plaintiff's RFC, specifically clarifying, as needed, limitations related

to plaintiff's vision; and (3) proceed through steps four and five to determine what work, if any, plaintiff is capable of performing in light of his visual and other impairments.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: June 1, 2015



_____

SHERI PYM
United States Magistrate Judge